UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
PHILIPS MEDICAL SYSTEMS, INC.,

                Plaintiff,

  -v-

MARCUS CARTER, ET AL.,

                Defendants.
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 1 5 2012

11 Civ. 2468 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

I.  INTRODUCTION

Plaintiff, Philips Medical Systems, Inc., brings this action against three of its former employees, Marcus Carter ("Carter"), Luciano Albuquerque ("Albuquerque"), and Edward Sokolowski ("Sokolowski") (collectively, "Defendants") alleging breach of contract, unfair competition, breach of fiduciary duty, and intentional spoliation/fraudulent concealment. (Am. Cmplt. 13-17). Defendant Carter moves to dismiss the Amended Complaint in its entirety on the grounds of *res judicata*. (Mot. 1). Defendants Albuquerque and Sokolowski, proceeding *pro se*, join in Defendant Carter's motion. (Dkt. # 44, 47). For the reasons stated herein, Defendants' motion to dismiss is DENIED.

II.  LEGAL STANDARD

Although res judicata is an affirmative defense, it may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). In considering a motion to dismiss, the Court must accept as true all facts alleged in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In addition to the allegations of the complaint itself, the Court may consider documents that are attached to the complaint or incorporated in it by reference. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The following facts are drawn from the Amended Complaint and from the declaration filed by counsel for Defendant Carter in support of the motion to dismiss.

III. <u>FACTUAL BACKGROUND</u>

Plaintiff manufactures, sells, and services nuclear medicine imaging systems. (Am. Cmplt. ¶7). BC Technical Inc. ("BCT") is a corporation that both services equipment made by Plaintiff and sells refurbished equipment made by Plaintiff. (Am. Cmplt. ¶11). BCT and Plaintiff "compet[e] aggressively." (Am. Cmplt. ¶11).

In 2008, Plaintiff filed suit in the United States District Court for the District of Utah against BCT alleging copyright infringement, trademark infringement, misappropriation of trade secrets, tortious interference with business relations and violations of the Utah Unfair Competition Act (hereinafter, "the BCT Litigation"). (Am. Cmplt. ¶12). Defendants Carter, Sokolowski, and Albuquerque were not named as defendants in the BCT Litigation. (LaRosa Decl. Ex. A). Indeed, at the time that Plaintiff commenced the BCT Litigation, it was unaware of the misconduct alleged in the instant action. (Am. Cmplt. ¶13).

During the course of discovery in the BCT Litigation, in approximately October 2009, Plaintiff discovered that Defendants had taken confidential and proprietary information when they left Plaintiff's employ and had shared this information with others at BCT. (Am. Cmplt. ¶13). Plaintiff further uncovered that Defendants had, during the course of the BCT Litigation,

deleted evidence of such misconduct from their computers. (Am. Cmplt. ¶17). As the result of discovering these acts of spoliation, Plaintiff moved for sanctions. (Am. Cmplt. Ex. 1 at 11). On July 27, 2010, the magistrate judge assigned to the case recommended that the district court strike BCT's answer, dismiss BCT's counterclaims, and enter default judgment as to liability in Plaintiff' favor. (Am. Cmplt. Ex. 1 at 116, 117). On February 15, 2011, the district court adopted the magistrate judge's recommendation in its entirety. (Am. Cmplt. Ex. 2 at 9).

On March 16, 2011, Plaintiff and BCT entered into a settlement agreement ("the BCT Settlement Agreement"). (Am. Cmplt. ¶45). BCT agreed to pay a sum of money to Plaintiff in exchange for a release from all claims. (Am. Cmplt. ¶45). Plaintiff expressly reserved all claims it might have against certain individuals, including Defendants Carter, Sokolowski, and Albuquerque. (Am. Cmplt. ¶45).

On March 31, 2011, Plaintiff and BCT submitted a stipulation of dismissal with prejudice to the Utah district court, (LaRosa Decl. Ex. B), which was ordered by the district court the same day (LaRosa Decl. Ex. C).

Plaintiff initiated the instant action in April 2011 when it filed suit in this Court against Defendants Carter, Sokolowski, and Albuquerque. (Dkt. # 1). Plaintiff amended its complaint in March 2012 and alleges that when Defendants left Plaintiff's employ, they took confidential and proprietary information and used and shared this information with others during their employment at BCT. (Am. Cmplt. ¶¶15-16, 23-24, 29-30).

While employed by Plaintiff, Defendants Albuquerque and Carter signed Employee Ethics and Intellectual Property Agreements, in which they agreed, *inter alia*, "[n]ot to use, publish or otherwise disclose (except as [their] job requires) either during or after [their]

3

employment, any secret or confidential (proprietary) information or data of [Plaintiff] or its customers or any third party received by [Plaintiff] in confidence" and "[u]pon the termination of [their] employment, to deliver promptly to [Plaintiff] all written and other materials that relate to the business of the company or its affiliates." (Am. Cmplt. ¶¶14, 21).

Additionally, while employed by Plaintiff, Defendants and Albuquerque and Sokolowski signed a Nondisclosure and Inventions Agreement, which similarly contained agreements not to disclose confidential information and to return all materials to Plaintiff upon termination of their employment. (Am. Cmplt. ¶¶22, 27).

Finally, also while employed by Plaintiff, Defendants Albuquerque and Sokolowski signed additional documents containing similar agreements regarding non-disclosure and return of confidential or proprietary information. (Am. Cmplt. ¶¶22, 28).

Plaintiff alleges that the Defendants violated these agreements when they took confidential and/or proprietary information from Plaintiff, that they have wrongfully exploited this information, that they have willfully and fraudulently attempted to conceal this misconduct, and that these acts have been in breach of a fiduciary duty owed to Plaintiff. (Am. Cmplt. pp. 13-17).

Relying on the dismissal of the BCT Litigation, Defendants have moved to dismiss the Amended Complaint on the grounds of *res judicata*.

IV.  ANALYSIS

The doctrine of *res judicata* has two distinct branches: claim preclusion and issue preclusion. *Taylor v. Strugell*, 553 U.S. 880, 892 (2008). Under claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of

4

the claim raises the same issues as the earlier suit." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). By contrast, issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. at 748–749). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–154 (1979)). In the instant case, Defendants move to dismiss the Amended Complaint on the grounds of claim preclusion. (Mot. 7-8).

The first step in determining the claim-preclusive effect of a dismissal by a federal court is assessing what body of preclusion law to apply. In making this assessment, the Court must consider the basis for the rendering court's jurisdiction. That is, federal preclusion law applies when a prior action is decided under federal question jurisdiction. *Carlin v. Gold Hawk Joint Venture*, 778 F.Supp. 686, 690 (S.D.N.Y. 1991). When the rendering court sits in diversity, federal law also governs the claim-preclusive effect, but federal law requires looking to the preclusion law of the State in which the rendering court sits. *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

Here, the rendering court was sitting in both federal question and diversity jurisdiction, (Am. Cmplt. ¶12; LaRosa Decl. Ex. A), raising the question of whether this Court should apply federal preclusion law or look to the preclusion law of Utah. However, the Court need not decide this question because, as a general matter, the preclusion law of the Second Circuit is the same as that of Utah. *Compare Greenwich Life Settlements, Inc. v. ViaSource Funding Grp.*,

*LLC*, 742 F. Supp. 2d 446, 453 (S.D.N.Y. 2010), *with Macris & Assocs. v. Neways*, 16 P.3d 1214, 1219 (Utah 2000). *See also Youren v. Tintic Sch. Dist.*, 86 P.3d 771, 772 (Utah Ct. App. 2004) ("[T]he legal analysis under the claim preclusion branch of *res judicata* in the Utah common law is virtually identical to that in the federal common law.") (cited with approval in *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 965, n.5 (Utah 2008)).

If a case is dismissed pursuant to a settlement agreement, the relevant consideration is enforcement of the terms of the agreement. The Second Circuit has stated that "[t]he preclusive effect of a settlement is measured by the intent of the parties to the settlement." *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992). Indeed, the Second Circuit took this approach in a case, like the case at bar, in which the plaintiff asserted claims against a defendant who was not a party to the previously settled lawsuit. *See Boguslavsky v. S. Richmond Sec., Inc.*, 225 F.3d 127 (2d Cir. 2000). The Second Circuit held that the question of whether the plaintiff's settlement agreement with the defendants in the prior litigation barred the plaintiff from subsequently suing the new defendant turned on the intent of the contracting parties *Id.* at 130 (citing 18A Fed. Prac. & Proc. Juris. § 4443 (2d ed.)).

This approach is confirmed by *Wright & Miller* : "[t]he basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." 18A Fed. Prac. & Proc. Juris. § 4443 (2d ed.). *See also* 18-131 Moore's Federal Practice - Civil § 131.30(3)(c)(ii) ("Judgments based on the agreement of the parties in settlement of disputed claims closely resemble contracts. This dual character as both a contract and a judgment has resulted in different treatment for different purposes. . . . [S]uch judgments have the claim preclusive effect of any other final judgment on the merits. However, when the judgment is ambiguous as to whether it is intended to preclude future claims, courts

employ basic contract interpretation principles to determine the intent of the parties.").

Defendants have not argued that Utah law dictates a different analysis. Indeed, Utah courts apply general principles of contract interpretation to settlement agreements. *See Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995) ("Settlement agreements are governed by the rules applied to general contract actions.").

The Court therefore looks to the terms of BCT Settlement Agreement, which unambiguously contemplates future lawsuits against individuals not named in the BCT Litigation. Paragraph two of the Settlement Agreement states, in part, "BCT and Philips acknowledge and agree that Philips is not being made whole under this Agreement and Philips will look to hold other involved parties accountable to compensate Philips for its claims of misappropriation of trade secrets, violation of the Utah Unfair Competition Act, and/or tortious interference." (Am. Cmplt. ¶45). Paragraph 4(b) states, in part, "the mutual releases granted herein do not in any way release . . . the following: . . . Edward Sokolowski; Marcus Carter . . . Luciano Albuquerque." (*Id.*) In light of this explicit language, and drawing all reasonable inferences in favor of Plaintiff, as is required on a motion to dismiss, this Court concludes that the parties to the BCT Litigation did not intend to preclude any future claims by Plaintiff against Defendants, and Defendants' motion to dismiss the Amended Complaint is DENIED.

V.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' motion to dismiss the Amended Complaint is DENIED; and it is further

ORDERED that the parties submit a case management plan to the Court on or before September 12, 2012 ; and it is finally

ORDERED that all represented parties appear by counsel and that all parties proceeding *pro se* appear personally for an initial pretrial conference before the Court on September 21, 2012 at 2:30 PM in Courtroom 17B of the United States Courthouse for the Southern District of New York, 500 Pearl Street, New York, New York.

SO ORDERED.

Dated: August 15, 2012
New York, New York

_____
ALISON J. NATHAN
United States District Judge

8